Good morning, may it please the Court, Counsel. Your Honor, at this time I would like to reserve three minutes for rebuttal, if I may. Try to keep track of your own time. You've got three minutes. And I'm going to ask the Court to slightly bear with me. I've got more timelines on this case than I ever thought existed in one proceeding. This is a speedy trial issue, and at this point the government has agreed that 60 days of that speedy trial clock has passed. And that would be the period of March 23, 2000, when Mr. Tewid was arraigned, and May 4, 2000, the stipulation regarding competency, wherein 40 days ran on the 70-day speedy trial clock. The other period of time that we agree with is 21 February, 2002, and that's the date that a stipulation was filed stating that Mr. Tewid is now competent and we request a trial. From then until March 13, when trial counsel filed a motion to dismiss based on a violation of the Speedy Trial Act, and that's 20 days. So we're looking at approximately 60 to 61 days that we all agree on. What I've opted to do in this case, given the length of time which I have to argue this morning, is start with what I believe is the most easily ascertainable period of time, and that would be the time which Mr. Tewid and I believe the clock continued to run. On 15 December, 2000, Mr. Tewid was deemed competent by the Bureau of Prisons in Springfield, where he was being treated for the purpose of restoring his competency. The warden at the prison on that day, Mr. Tewid, said, well, I'm not going to do this. I'm not going to do this. I'm not going to do this. I'm not going to do this. I'm not going to do this. And on 10 January, 2001, Mr. Tewid, according to the record, was transported to Guam. I anticipate when the government argues, they're going to say, well, Mr. Aarons said that this period of time is not going to affect the speedy trial clock moving. However, I think the government will claim that I'm wrong in that assertion, because it was not a court order which is required by the speedy trial clock 10 days beyond the order of the court for transportation. Rather, it was a request to transport. Having reviewed the record, I believe it was July 24, 2000, which initially facilitated the movement of Mr. Tewid to Springfield for his psychological evaluation. In that order, transporting him to Springfield, the judge also ordered the United States Marshal Service to return Tewid when the treatment is complete. And that's in the supplemental excerpt of record 12. On the 15th of December request, it was stated that the facilities, physicians have completed their study and that 24 July order of the court, which said upon Mr. Tewid, the completion of Mr. Tewid's treatment, that he'd be transported back to Guam. Suppose the report, we don't know and you haven't argued what the report is, but suppose they completed their examination and found that he was incompetent. Would that still serve the clock running? Well, according to the law, Your Honor, it seems that all periods of time when a defendant is incompetent is excluded from the application to the speedy trial. So you say that overrides the transportation? No, I wouldn't say that. Well, at that point. But, in fact, he was competent. He was deemed competent. And in the request to transport, it said, please ensure that it is critical to maintain competency, that he have 15 days' worth of medication. So it's clear from that request to transport that he was competent. But those documents don't explain that. There was no court determination of competency. That's correct. Not at that time. I guess part of the question is, when you have, under the statute, when you have a request for competency, and you have a request to transport, and then you have a number of things going on before there's a final determination, is all of that time excluded or not? That's what's been quite complicated about this case. And my response to that would be, Your Honor, is one section of the statute says all periods of delay during the pendency of a competency hearing are excluded. All periods of delay based on the incompetency of the defendant is excluded. But then we have subsection H1H, which specifically says anything in excess of 10 days from the date of the order is presumed unreasonable. And what that section's referring to is transport of a defendant from an examination. And so it seems to me we wouldn't have H1H if we were to rely upon H1A, which basically says all time resulting from a mental examination. We have the two very distinct portions of the speedy trial statute. And so our contention, in a nutshell, is that the judge's order said when treatment completed, the defendant was exempted. The U.S. marshal had notification of that treatment being completed. The request for transportation said that he or indicated that he was competent at that time. And so I don't think the portion of the statute which says as long as he's incompetent, the time doesn't run is applicable in this case. I understand your technical argument on this, but tell me how you think it makes sense in terms of the aims of the speedy trial act. I mean, it seems to me you have a competency examination being performed, and there is a recommendation one way or the other, and perhaps it's under seal. Perhaps in some case, hypothetically, it would be under seal, and no one would know what the evaluation was until the hearing. So there's nothing really the State could do or that you could do during the course of the trial. I don't agree when he is, prior to the time he's transported. No court proceedings really are going to occur. So why is it consistent with the theory of the speedy trial act to not exclude that time until the competency hearing is actually held? In answer to that question, Your Honor, I would resort to subparagraph H1H. It specifically says delay resulting from transportation of defendant from places of examination. And anything in excess of 10 days is deemed unreasonable. And that's the law. And Mr. Tewitt was not transported within 10 days, subtracting the 10 days from the time he was, the request for transportation. You have 16 days that are not excludable. And to further answer your question, and I've been puzzled by this. This has been a more complicated appeal than I've done in a while. Of course, I didn't write the opening brief, and I think that made it more so. But in the big picture of Mr. Tewitt's situation, the delays were so extensive that at one point, when they were scheduled to have the competency hearing, lo and behold, he wasn't competent anymore. And so it seems to me that the public policy concern is such that we must be mindful of these time periods, particularly in a case like Mr. Tewitt's. Now, I imagine also that the government's going to argue, well, Henderson's going to override, because, of course, Henderson stands for the proposition that any period of time, from the filing of a motion to the actual hearing, to include further submissions by the parties is excludable. Well, Henderson, Your Honor, was not dealing with a person whose mental stability was as shaky as Mr. Tewitt's. And, in fact, in Henderson, it would be hard for me to articulate, as Henderson's attorney, what the prejudice was to Henderson. On the other hand, the prejudice to Mr. Tewitt was approximately two years, maybe a little more, before he even went to trial. Lapsed back into incompetency, had to be retreated. And so it seems that the state of Mr. Tewitt and people in his situation heightened the demands of the Speedy Trial Act. Are you suggesting there's some causal link between the delay and the fact he lapsed back into incompetency, or is that simply something that occurred because of the return to Guam and the apparent change in medication? And even if they'd brought him back a little sooner, he probably would have wound up with the same problem. There was a change in medication. So, what I'm saying is, suppose they hadn't taken, I think you said, 16 days to return him, that accomplished it in less than 10. Is there any reason to think that caused the subsequent year delay because he lapsed back into incompetency? Your Honor, not in and of itself, but not only was the transportation an exacerbating factor in this case, but if the court will take note that it wasn't that, excuse me, that there was a period of time after he finally returned to Guam of approximately 73 days that passed above and beyond the 16 or 26 days in transportation. So, there was, in my opinion, there was inattentiveness on behalf of perhaps everybody in getting Mr. Tewitt to his trial in a timely fashion, and certainly the transport was only one of those factors. But there was a significant delay after he finally got back. It took Dr. Wolfson, it took them 35 days to send the psychiatric report to Guam, and then I believe there was another month until the hearing that collapsed. There's one other point of time that I believe, and I suggest to the court, is easily ascertainable, and that would be the period of 9 April 2001. That is when they finally had the competency hearing. I wasn't watching the clock. You're four minutes over now. Oh, I beg your pardon. I see 3.59 on this, or three minutes left on the clock. Oh, I'm sorry. Yes, it is three minutes left. Well, then I'll give you your three-minute warning. It's over. Unless there are any questions, I apologize for that. You'll look at the April. Thank you so much. District Court Counsel, good morning, Your Honors. My name is Mara Vick-DeVitt, and I represent the government in this appeal. The district court below held that the time frame of May 4, 2001, the initial issue of the defendant's mental competency was first raised before the court until the final determination by the court was made that the defendant was competent to proceed on February 21, 2002, or excludable under the Speedy Trial Act. And it's ruling the court relied on three provisions of the Speedy Trial Act, and those are the provisions that concern mental competency proceedings, and that's subsection 8.1a of section 3161 of the Speedy Trial Act, another provision the court relied upon under pretrial motion provision of the Speedy Trial Act, and that is subsection 4. And the fact whether or not the defendant was competent to proceed to trial, and that is subsection H4 of the Speedy Trial Act. It's the government's decision that based on the procedural history of this case that the court did not err. What happened during that time frame? As early as May 4, 2000, the defendant first requested to the court that his client was incompetent to proceed. Now, keep in mind, this defendant was familiar not only to both parties in this case, but also to the court based on his prior conviction in the District Court of Law for illegal reentry. The instant conviction also concerned an illegal reentry count. In fact, the defense acknowledged that in the competency hearing of April 2001, that his client had a record of mental problems. When the initial request for a competency examination was made by the defense, the defendant had to be examined by two doctors, one on-island and one off-island. The off-island doctor who examined the defendant had to conduct two mental competency examinations. The defendant had to be restored to competency two times. It seems like the argument principally made by the defendant is not that there's a doubt about that first stopping of the clock because of the initial examination, but he focused attention on a couple of particular time periods later, starting with kind of the midpoint when he's in Missouri and first appears to be restored to competency and is to be returned to Guam. He identifies specifically subsection H of the statute as suggesting there's an internal time clock on just the transportation component and that that time clock can't be disregarded. What do you have to say to that concern? It's the government's decision, Your Honor, that based on the other provisions of the speeding trial act that they override that particular subsection. Why would that subsection be in the statute? Is there a situation where it could apply? I wouldn't even begin to speculate. Well, that's the concern I have, that we're not supposed to disregard portions of statutes. Well, perhaps, Your Honor, there are other situations where a defendant needs treatment but not necessarily for his mental competency. This would be overriding issue in this case that the defendant himself persuades. Another thing about this case, Your Honor. Well, before you leave that, though, I think Judge Clifton raises an interesting point because the subsection talks about transportation to and from places of examination and if we applied Henderson to say that the time was excluded while competency proceedings were being undertaken, it would pretty much eviscerate the meaning of that subsection, wouldn't it? As I recall in Henderson, there was an issue of the defendant's competency rates in that particular case and the time period until a competency hearing was held was found to be the relevant time frame. Right. I understand the context of Henderson, but that trumps this provision. You didn't mean that you could never have the application of this provision. Your Honor, it wasn't a provision that was raised in Henderson. But what I don't understand is the district court's order which says the order directing marshals to transport the defendant back to Guam was not filed until January 11th. There's no indication in the record when the marshals actually transported him back to Guam when he actually arrived in Guam. Therefore, there's no proof it was violated. I think also at the competency hearing, the court considered the location of Guam, the lack of resources in the marshal's service office in transporting the defendant to and from. Right. But I guess what I was striving at is the district court seemed to think it was important and then rejected it for lack of proof. Well, if that subsection is in play, then it seems to me one can actually ascertain when the transportation occurred and might require a remand on that point. I mean, it seems to be circular logic to a certain extent, or failure to say, well, there's no proof of when he came back. It could be even yesterday. So therefore, it's not violated. That's kind of a leap of faith. But obviously, the district court seemed to think that that subsection meant something in this context. That's correct, Your Honor. The record does reflect that. However, the district court found that the other provisions overrode that particular subsection. Also, Your Honor, in this case, during the timeframe involved, the parties envisioned that until a determination was made whether or not the defendant was competent to proceed, the parties envisioned a competency hearing and a final judicial determination that the defendant was competent to proceed. In fact, three stipulations were prepared by the parties and filed in court, acknowledging that delays in this case would be excludable under the Speedy Trial Act. Now, the government acknowledges that the defendant cannot waive the Speedy Trial Act. However, it seems unfair that the defendant under the Speedy Trial Act would, on the one hand, stipulate to those excludable delays and the court's findings based on those excludable delays, yet at the same time, later attempt. The government submits, Your Honor, that the district court below did not err in its ruling, and the delays attributable in this case were the result largely from determining whether the defendant was competent to proceed, as well as the two pending motions. Is it your position, essentially, that there was a one single pending motion for competency determination that started on May 4, 2000 and was not resolved until the final determination that he was competent? Yes, Your Honor, as well. Did all that time, there was that motion for determination that competency was pending? That is what the parties envisioned when they prepared three stipulations to that effect. As well, Your Honor, there were two pretrial motions pending in this case raised by the defendants. One, the initial motion to dismiss, and the instant motion to dismiss under Speedy Trial grounds. Now, there have been Ninth Circuit case law, and I refer to the case of U.S. Well, no, no, the instant motion was waived again long after counsel says the 70 days had been exceeded. Your Honor, there was also another motion to dismiss, again, based on the defendant's competency to proceed that was filed long before that, and it's the government's position that that motion remained unresolved. Still today? That motion was resolved at the final motion to dismiss hearing. And when was that motion filed, the motion to dismiss? The first motion to dismiss was filed back in May 8 of 2001. And based on U.S. v. Gorman, based on U.S. v. Horacy cited in the government's brief, that time period would have been excludable under the Speedy Trial Act. Yeah, but that was after the period that counsel's claiming brings you over the well, that was after the time of the alleged improper delay for transportation. But it might affect what, the last 20 days? Yes, Your Honor. Well, would that affect beyond the date of the stipulation with regard to his competency? Which was February 21, 2002, parties stipulated his competency to stand trial. Is there something else that disposed of the May 2001 motion to dismiss, or was there anything remaining in that motion after the stipulation? No, Your Honor. And I take it, I don't hear a dispute from the defendant with regard to the time period from May 2001 to February 2002. I hear disputes later, and I hear a dispute earlier with regard to his transport back to Guam from Springfield the first time. Maybe you should address more to your colleague. I don't think that period of time is really in the context. It would overlap. In conclusion, Your Honors, the government submits to the motion. There was no deliberate attempt on the part of the government to delay the proceedings in this case. In fact, the trial took only two days, and the government was ready to proceed once the final determination had been made by the court. Thank you, Your Honor. All right, we'll give you another couple minutes to rebuttal. Your Honor, mention was made of really no concrete evidence as to when Mr. Tewitt first arrived back to Guam. I would say the only evidence in the entire record is an affidavit filed by trial counsel which stated he was returned to Guam on 10 January, and it was never disputed by anybody below. That affidavit was never disputed. Well, the order, I thought it was January 11th. Did he actually come back before the order? Okay. Keep in mind that the order, and I don't know why that January 11th order was even filed given the 24th of July order, which was very specific, that once treatment was completed they were to transport Mr. Tewitt. There's been no allegation that there was a deliberate attempt by the government or by anybody else to violate Mr. Tewitt's trial rights, and I don't think, though, that that's even relevant in a determination of whether his rights were violated. It doesn't seem to me that Mr. Tewitt has any moment in this matter. With regard to the stipulations and the waivers, the government is accurate. In fact, in Burberry, the government's case cites to a Pringle, a Ninth Circuit case, which does say you cannot waive the protections of the Treaty Trial Act. I've lost track maybe of the dates, but aside from the transportation delay, what specific delay are you relying on before the, I'm not talking about the 20 days at the end or the 40 days at the beginning. What in the middle other than transportation? If I could take time on that and pick up on the... Just quickly give me the dates. 9 April 2001 to 8 May 2001, Your Honor. That was from the conclusion of the competency hearing until the defendant filed a motion to dismiss based on competency. In a nutshell, there were motions pending. There were no requests for further filing. Well, at the end of the competency hearing, did the court issue an order on April 9th? Not to my knowledge. So why wasn't something pending? We have a hearing on competency. And at that hearing, the defense counsel said that his client is no longer competent because they changed the medication. So it seems to me clearly at that point, his competency is once again an issue. An issue. Well, that would suggest the earlier time period. Frankly, by April 9, if defense lawyer stands up and says, my client's no longer competent, then it seems to me clearly the clock has stopped because competency is now at issue again. So that's not the start of the problem. That's the end of the problem. Maybe before that, there's some question. But April 9 is not a date that I would pick as a start of a problem because then the defense lawyer is saying he's not competent. And if that's the case, then the clock can't be ticked. The only reason I even brought that to the court's attention is the statute states subsection H-4, any period of delay resulting from the fact that the defendant is mentally incompetent. I don't know that we had a fact that the defendant was incompetent at that hearing. We have a defense counsel saying, gosh, I noticed something's wrong with him. My client doesn't seem like he did a couple months ago when he first returned to Guam. But I don't know that that's a fact contemplated under subsection H-4. Is there anything else other than the transportation that falls during the interim between the 42 days and the 20 days? The only thing I would ask the court to consider on review, quite respectfully, is the inordinate amount of delay from both times that the court had received a report from Springfield. In the second report from Springfield, there was over a 100-day delay before anything was done. On the first one, there was a 70-some day delay. Now, we would concede that 30 of those days are deducted under the 30-day period of advisement, under I believe it's subsection J of the statute. But it seems to me that if we looked at Henderson by the book, literally speaking, those aren't winners. What I am asking the court to do, though, is distinguish between this case and Henderson. And I differ with counsel. I don't believe Henderson involved the issue of mental competency. It was a motion to exclude which told the plot. And having said that, I would rest and thank the court very kindly for having me here today. Thank you, counsel. Thank you both very much. The case gets argued, will be submitted. The next case on the calendar is Chen v. Ashcroft, the first Chen v. Ashcroft. Thank you.
judges: Reinhardt, Thomas, Clifton